Argued November 18, 1974, remanded with instructions
January 20, 1975

GRAHAM ET UX, *Petitioners, v.* OREGON LIQUOR
CONTROL COMMISSION, *Respondent.*

530 P2d 858

*Jack L. Joyce,* Philomath, argued the cause and filed the brief for petitioners.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

■ Respondent Oregon Liquor Control Commission denied petitioners' application for a Retail Malt Beverage Class C license. After denial, petitioners requested and received a formal hearing on December 6, 1973, at OLCC offices in Portland. The application

was again denied. After this court's opinion in *Sun Ray Dairy v. OLCC*, 16 Or App 63, 517 P2d 289 (1973), OLCC granted petitioners a second hearing which was held in Corvallis, Oregon, February 19, 1974. Thereafter, at its regular meeting on April 22, 1974, the Commission "having studied and considered the entire matter, including the full transcript and exhibits of the hearing proceedings * * *,"① again denied the license application. This petition for review, pursuant to ORS 183.480, followed.

■ Petitioners' first assignment of error is that OLCC received information bearing on contested issues of fact which was not offered at either hearing, depriving petitioners of their right of cross-examination.

The matters involved in this assignment were generally letters and petitions sent to the Commission subsequent to the February 19, 1974, hearing and some colloquy at the OLCC meeting on April 22, 1974, when someone from the audience offered information with respect to the outlets at the University of Oregon.

OLCC concedes that the receipt of letters and petitions after the February 19, 1974, hearing may have been improper under ORS 183.450.② It points out, how-

---

① This quotation negatives petitioners' claim of failure to comply with ORS 183.460 in assignment of error No. 2. The assignment is that the "record is devoid of any indication that the respondent [OLCC] considered the record."

② ORS 183.450 provides:
"In contested cases:
"* * * * *
"(2) All evidence shall be offered and made a part of the record in the case, and except for matters stipulated to and except as provided in subsection (4) of this section no other factual information or evidence shall be considered in the determination of the case. Documentary evidence may

ever, that petitioners were on notice that such material was being filed with the Commission and made no effort to examine it.

ORS 183.450 (1) provides:

"In contested cases:

"(1) The rules of evidence as applied in equity cases in the circuit courts of this state shall be followed. Every agency shall provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence, *but erroneous admission of evidence shall not preclude agency action on the record unless shown to have substantially prejudiced the rights of a party.* Agencies shall give effect to the rules of privilege recognized by law. Objections to evidentiary offers may be made and shall be noted in the record. When a hearing will be expedited, any part of the evidence may be received in written form." (Emphasis supplied.)

be received in the form of copies or excerpts, or by incorporation by reference.

"(3) Every party shall have the right of cross-examination of witnesses who testify and shall have the right to submit rebuttal evidence. Participants permitted to intervene by the agency shall have such rights as determined by the agency by rule or otherwise.

"(4) Agencies may take notice of judicially cognizable facts, and they may take notice of general, technical or scientific facts within their specialized knowledge. Parties shall be notified at any time during the proceeding but in any event prior to the final decision of the material so noticed and they shall be afforded an opportunity to contest the facts so noticed. Agencies may utilize their experience, technical competence and specialized knowledge in the evaluation of the evidence presented to them.

"(5) No sanction shall be imposed or order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party, and as supported by, and in accordance with, reliable, probative and substantial evidence.

"(6) Agencies may, at their discretion, be represented at hearings by the Attorney General."

The evidence mentioned was largely cumulative and some was favorable to petitioners' position. Petitioners have made no showing that such evidence "substantially prejudiced the rights" of petitioners. Viewed thus, we do not consider this error requires reversal.

██ In their fourth assignment of error petitioners attack the "Findings of Fact" of the Commission. They contend that the findings are inadequate under ORS 183.470, which provides:

> "Every order adverse to a party to the proceeding, rendered by an agency in a contested case, shall be in writing or stated in the record, may be accompanied by an opinion, and a final order shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order. Parties to the proceeding shall be notified of a final order by delivering or mailing a copy of the order or accompanying findings and conclusions to each party or, if applicable, his attorney of record."

Petitioners contend that rather than "a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order * * *," the Commission's findings "merely summarize the testimony."

2 Cooper, State Administrative Law 474 (1965), recites the general test as to the specificity of findings as follows:

> "All in all, the state courts show a remarkable uniformity in defining the general tests to be applied in determining the sufficiency of the findings. In applying these tests, the courts: (1) require

that the findings include the basic facts; (2) require that the findings be sufficiently complete to make it clear that the agency considered all the relevant statutory factors; (3) refuse to accept findings that are cast too much in conclusionary terms; (4) remand findings that are too indefinite to permit the court to fulfill its appellate functions; (5) *refuse to accept as 'findings' statements that are merely summaries of the evidence. * * *"* (Emphasis supplied.)

With reference to findings that are merely summaries of the evidence, Cooper, supra, concludes at 478:

"Sometimes, apparently seeking to avoid the hard work and the necessity of disciplined weighing of the testimony that is required in making definite findings on all the relevant basic facts, an agency merely summarizes the testimony of all the witnesses, and then (implying that the testimony in ways not particularized supports its conclusions) sets forth the ultimate conclusions of fact and law in statutory language. The courts agree that this is not a sufficient compliance with the mandate to make findings of fact.[151]" (n 151 citing, inter alia, *Valley & Siletz R.R. Co. v. Flagg,* 195 Or 683, 247 P2d 639 (1952).)

We conclude in the present case that the so-called findings of fact are merely summaries of the evidence.[3]

---

[3]

### "FINDINGS OF FACT

"Kenneth T. Graham and Joy W. Graham, applicants for Retail Malt Beverage license in trade name Tally Ho Enterprises at 1501 N. W. Monroe, Corvallis, Oregon were represented by Jack Joyce, Attorney at Law, Philomath, Oregon. Co-applicant Kenneth Graham, certified public accountant, graduate of Temple University, established that their restaurant seats 40 people and the license would add food traffic and be a boon to the business in the area. Co-applicant Joy Graham, manager of their restaurant emphasized that their restaurant would be remodeled at a cost of approximately $5,000, that they have time deposits to cover expenses and

The so-called "Ultimate Facts" follow the findings of fact. They are:

## "ULTIMATE FACTS

"The granting of the license in the locality set out in the application is not demanded by public interest or convenience and there were objectors in the area. The site of the proposed license is too close to the campus. There are objectors and the available parking area is insufficient."

These "Ultimate Facts" are subject to the following deficiencies: The *facts* which the *Commission finds* support the position that "the granting of the license is not demanded by public interest or convenience" are not set forth as findings of the Commission. The "Ultimate Facts" state that "there were objectors in the area," and "[t]here are objectors," but do not relate the

that their place is a quiet, pleasant and tasteful restaurant. Charles DeDeurwaerder, City Planner, emphasized that in his opinion, no deterioration of the area would result from license issuance and that it would provide a good place for students and professors to confer. Mrs. Martha Rose, Jeff Blixt and Hugh White, members of Corvallis City Council, emphasized that they considered this application very carefully and with the concurrence of the Chief of Police decided this license would be advantageous to their city. In all, there were thirty seven people who appeared and gave their opinions that this application would be good for Corvallis and the area. The following people appeared as objectors to this application and convincingly gave their opinions as to why it should be refused; Doctor Robert MacVicar, President of OSU, that the license would be directly across the street from school property and the area is environmentally fragil [sic]; Mary Livingston, that there is too much congestion, parking difficulties, too close to campus and would be a temptation to students; Professor Robert Houstan, primarly [sic] pointed his opposition to the city and City Planning Commission and reluctantly opposed this license; Retired Professor Grant Feikert, believes this would start a ring of licenses around the campus; Gary Baker feels there are sufficient licenses in Corvallis and Stewart Metzger believes there should be a dry zone around the campus."

Commission's determination (except by inference) as to whether the position of the objectors was more tenable than that of those favoring the outlet. While two of the "Ultimate Facts," "* * * too close to the campus" and "available parking area is insufficient," are less objectionable, they, too, are backed up only by summaries of the evidence, without any indication (except by inference) what evidence the Commission believed and relied upon. No finding was made (except by inference) on what appeared to be an issue in the hearing, i.e., whether there were sufficient licensed premises in the locality. It was the duty of the Commission to make findings of fact pursuant to ORS 183.-470, on these issues. *Wright v. Insurance Commissioner,* 252 Or 283, 293, 449 P2d 419 (1969).④ In *Valley & Siletz R.R. Co. v. Flagg,* 195 Or 683, 714, 247 P2d 639 (1952), it is pointed out that such findings are necessary as

> " 'facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction.' "

Remanded with instructions to make findings of fact and conclusions of law as required by ORS 183.470.

Remanded with instructions.

---

④ There the court reiterated

"* * * the requirement that the administrative fact-finding agency make clear and complete findings of basic fact, so that the reviewing court can determine whether (1) the basic facts are supported by evidence, and (2) whether the required ultimate fact can be reasonably inferred from the basic facts."